STATE OF NORTH CAROLINA v. DEREK SCOTT McQUEEN

No. COA06-203

(Filed 16 January 2007)

**1. Motor Vehicles— driving while impaired—requested instruction—testimony of interested witnesses—uniformed police officers**

The trial court did not err in a driving while impaired case by failing to give N.C. Pattern Jury Instruction 104.20, testimony of interested witnesses, with respect to the testimony of a uniformed officer who investigated the case because: (1) where officers are in uniform in the performance of their routine duties as in the instant case, our Supreme Court has held that it is improper to single them out as a class of witnesses that may be less credible due to their potential interest in the outcome of the case; and (2) there was no evidence indicating the officer had any particular interest in the case that would cloud his credibility.

**2. Sentencing— aggravating factors—failure to submit to jury—harmless error analysis**

The trial court committed harmless error in a driving while impaired case by sentencing defendant to an enhanced sentence based on aggravating factors that were not proven to a jury be-

yond a reasonable doubt, including that the negligent driving of defendant led to an accident causing property damage in excess of $500 and the negligent driving of defendant led to an accident causing personal injury, because: (1) a common law procedural mechanism existed for submission of aggravating factors to the jury in that North Carolina permits the submission of aggravating factors to a jury using a special verdict; and (2) the overwhelming and uncontroverted testimony at trial was that defendant totaled the victim's car and that one of the occupants of the car was bleeding from her face after the accident and was subsequently treated at the emergency room.

### 3. Sentencing— range—driving while impaired

The trial court did not err in a driving while impaired case by giving defendant a minimum and maximum sentence, because: (1) contrary to defendant's assertion, *State v. Weaver*, 91 N.C. App. 413 (1988), does not address whether a judge may impose a sentence range for convictions of driving while impaired; and (2) the face of N.C.G.S. § 20-179 provides for a sentencing range.

Appeal by defendant from judgment entered 15 September 2005 by Judge James E. Hardin, Jr. in Mecklenburg County Superior Court. Heard in the Court of Appeals 13 November 2006.

*Roy Cooper, Attorney General, by Patricia A. Duffy, Assistant Attorney General, for the State.*

*Robert W. Ewing for defendant-appellant.*

MARTIN, Chief Judge.

Defendant appeals from a judgment entered upon a jury verdict finding him guilty of driving while impaired in violation of N.C.G.S. § 20-138.1.

The evidence at trial tended to show that on 27 October 2004 at approximately 6:45 p.m., Angela Carter was driving her vehicle in Mecklenburg County, North Carolina. Ms. Carter's fourteen-year-old daughter and ten-year-old son were passengers in the vehicle. As Ms. Carter was about to make a left-hand turn, defendant's vehicle hit the right side of her vehicle, causing it to spin across the street. Ms. Carter's vehicle was heavily damaged and was towed from the scene. The following day, Ms. Carter took her children to the emergency room, where glass was removed from her daughter's head and her cuts were bandaged.

Officers from the Charlotte-Mecklenburg Police Department responded to the scene of the accident. Officer Webster interviewed defendant and noticed that defendant's eyes were red and glassy and that he smelled of alcohol. Defendant told Officer Webster that he had three beers prior to driving that evening. Officer Webster asked defendant to perform the walk-and-turn field sobriety test. Defendant stepped off the line and turned right instead of left as he had been instructed. Officer Webster then asked defendant to stand on one leg. Defendant was unsuccessful at this second field sobriety test, giving up after twelve seconds. Based on these field sobriety tests, Officer Webster formed a belief that defendant was impaired, arrested him, and took him to the Mecklenburg County Intake Center. An Intoxilyzer test was administered at 9:33 p.m., showing an alcohol concentration of 0.07.

Defendant presented no evidence, and a jury found him guilty of driving while impaired. At the sentencing hearing, the trial court found by a preponderance of the evidence the existence of two aggravating factors: (1) "[t]he negligent driving of the defendant led to an accident causing property damage in excess of $500.00" and (2) "[t]he negligent driving of the defendant led to an accident causing personal injury," as well as two mitigating factors. The trial court found the aggravating factors outweighed the mitigating factors and imposed Level Three punishment, sentencing defendant to a minimum term of 45 days and a maximum term of 120 days in prison, which was suspended, and defendant was placed on probation, subject to a condition that he serve three days in jail.

[1] Defendant's first argument on appeal is that the trial court erred in failing to give N.C. Pattern Jury Instruction 104.20, Testimony of Interested Witnesses, with respect to the testimony of Officer Webster. Defendant argues he is entitled to a new trial, citing *State v. Love*, 229 N.C. 99, 47 S.E.2d 712 (1948), *State v. Boynton*, 155 N.C. 456, 71 S.E. 341 (1911), and *State v. Black*, 34 N.C. App. 606, 239 S.E.2d 276 (1977). We conclude these cases are distinguishable from the present case and are inapposite. *Love* and *Boynton* involved plain clothes detectives buying liquor from defendants during prohibition. *Love*, 229 N.C. at 100, 47 S.E.2d at 713; *Boynton*, 155 N.C. at 461, 464, 71 S.E. at 344. *Black* involved an undercover agent buying marijuana from defendant. *Black*, 34 N.C. App. at 608, 239 S.E.2d at 277. These cases focus on the notion that detectives assigned to work undercover to gather evidence about suspected criminal activity of a spe-

cific nature committed by a defendant may have more of an interest in the outcome of a trial than do other witnesses. *See Love*, 229 N.C. at 103, 47 S.E.2d at 715; *Boynton*, 155 N.C. at 464, 71 S.E. at 344.

Conversely, in situations such as the present case, where the officers were in uniform in the performance of their routine duties, our Supreme Court has held that it is improper to single them out as a class of witnesses that may be less credible due to their potential interest in the outcome of the case. *State v. Hunt*, 345 N.C. 720, 726, 483 S.E.2d 417, 421 (1997); *State v. Williams*, 333 N.C. 719, 733, 430 S.E.2d 888, 895 (1993).

In *Williams*, the Court held that it was not error for the trial court judge to refuse to give a jury instruction that states in pertinent part: "[I]t is quite legitimate for defense counsel to try to attack the credibility of a law enforcement witness on the grounds that his testimony may be colored by a personal or professional interest in the outcome of the case." *Williams*, 333 N.C. at 732, 430 S.E.2d at 895.

In explaining why the trial court correctly refused to give such an instruction, the Court noted:

> The law has recognized that some witnesses, the accomplice and informant, for example, should in some circumstances be the subject of a cautionary instruction when requested. But it would be a dismal reflection on society to say that when the guardians of its security are called to testify in court under oath, their testimony must be viewed with suspicion. This would be tantamount to saying that police officers are inherently untrustworthy. The cure for unreliable police officers is not to be found in such a shotgun approach.

*Id.* at 732, 430 S.E.2d at 895 (quoting *Bush v. United States*, 375 F.2d 602, 604 (D.C. Cir. 1967)). The Court went on to state that instructions about the testimony of interested witnesses are proper in certain situations, but only when there is evidence that would "cast doubt upon the truthfulness and objectivity of the witness." *Id.* at 733, 430 S.E.2d at 895. In the present case, there was no evidence indicating that Officer Webster had any particular interest in the case that would cloud his credibility, and the trial court did not err in refusing to give the requested instruction with regard to his testimony.

**[2]** Defendant's second argument on appeal is that the trial court erred by sentencing defendant to an enhanced sentence based on

aggravating factors that were not proven to a jury beyond a reasonable doubt. We first note that defendant failed to object to this error at the sentencing hearing. Under N.C.R. App. P. 10(b)(1), failure to object at the trial level generally precludes an issue from being reviewed on appeal. This Court, however, has held that "[a]n error at sentencing is not considered an error at trial for the purpose of Rule 10(b)(1) because this rule is 'directed to matters which occur at trial and upon which the trial court must be given an opportunity to rule in order to preserve the question for appeal.' " *State v. Curmon,* 171 N.C. App. 697, 703, 615 S.E.2d 417, 422 (2005) (quoting *State v. Hargett,* 157 N.C. App. 90, 93, 577 S.E.2d 703, 705 (2003)). Therefore, this issue is properly before this Court. *See* N.C. Gen. Stat. § 15A-1446(d)(18); *State v. Harris,* 175 N.C. App. 360, 363, 623 S.E.2d 588, 590 (2006); *State v. Canady,* 330 N.C. 398, 401, 410 S.E.2d 875, 878 (1991). Consequently, we turn to the merits of defendant's argument.

Under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S. Ct. at 2362-63, 147 L. Ed. 2d at 455. For purposes of applying *Apprendi,* the U.S. Supreme Court in *Blakely v. Washington,* 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), stated:

> [T]he relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

*Id.* at 303-04, 124 S. Ct. at 2537, 147 L. Ed. 2d at 413-14 (citation omitted) (quoting 1 J. Bishop, *Criminal Procedure,* § 87, at 55 (2d ed. 1872)).

In the present case, the court sentenced defendant to a Level Three punishment based upon findings of two aggravating factors and that the aggravating factors substantially outweighed the mitigating factors, without submitting the factors to the jury. Absent a finding of aggravating factors, a defendant convicted of driving while impaired is subject to either Level Four or Level Five punishment, depending

on whether mitigating factors exist. N.C. Gen. Stat. § 20-179(f). Here the court imposed a more severe Level Three punishment based upon aggravating factors that the court found using a preponderance of the evidence standard. *See* N.C. Gen. Stat. § 20-179(f)(1), (i). This imposition of an aggravated sentence constitutes error under *Blakely* because the defendant received a sentence beyond the statutory maximum based upon aggravating factors that were not found by a jury based upon proof beyond a reasonable doubt.

Pursuant to a case which has subsequently been withdrawn, our Supreme Court has treated errors under *Blakely* as structural errors that are reversible *per se. State v. Allen,* 359 N.C. 425, 449, 615 S.E.2d 256, 272 (2005), *withdrawn,* 360 N.C. 569, 635 S.E.2d 899 (2006). However, in a recent case, *Washington v. Recuenco,* 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006), the United States Supreme Court held that "[f]ailure to submit a sentencing factor to the jury . . . is not structural error." *Id.* at 2553, 165 L. Ed. 2d at 477. Thereafter, our Supreme Court has held in *State v. Blackwell,* 361 N.C. 41, —— S.E.2d —— (2006), that according to *Recuenco,* the failure to submit a sentencing factor to the jury is subject to harmless error review. *Id.* at 44, —— S.E.2d at ——. The *Recuenco* Court also suggested that if the respondent in the case could have shown a lack of procedure for having a jury determine the applicability of aggravating factors, then the *Blakely* violation in that case would not have been harmless. *Recuenco,* 126 S. Ct. 2550 at 2550, 165 L. Ed. 2d at 471. In order to determine whether the *Blakely* error in this case was harmless, we must first consider whether a procedural mechanism existed at his trial.

In response to the ruling in *Blakely,* the North Carolina General Assembly enacted a procedure for aggravating factors to be proven to a jury under N.C.G.S. § 15A-1340.16. Pursuant to § 15A-1340.10, however, the structured sentencing scheme set out in Article 81B of Chapter 15A does not apply to cases involving a charge of driving while impaired. Instead, sentencing for a conviction of driving while impaired is governed by N.C.G.S. § 20-179. Section 20-179(d) states that "[t]he judge must determine . . . whether any . . . aggravating factors . . . apply to the defendant." The evidentiary standards on which such a determination is to be made are set out in N.C.G.S. § 20-179(o): "In the sentencing hearing, the State must prove any grossly aggravating or aggravating factor by the greater weight of the evidence . . . ." Defendant argues that N.C.G.S. § 20-179 does not provide a procedural mechanism for aggravating factors to be presented to a jury and therefore the *Blakely* error is not harmless.

The defendant in *Blackwell* also argued that the lack of procedural mechanism for submitting aggravating factors to the jury rendered the *Blakely* error in his case not harmless. In *Blackwell*, however, the lack of procedural mechanism stemmed from the fact that the *Blakely* Act had not been passed at the time of the defendant's trial. Our Supreme Court in *Blackwell* rejected defendant's argument and pointed out its logical shortcoming, noting "[t]here is no meaningful difference between having a procedural mechanism and not using it, and not having a procedural mechanism at all." *Blackwell*, 361 N.C. at 46, —— S.E.2d at ——. The Court further wrote: "Moreover, even assuming this language in *Recuenco* was intended to limit the scope of federal harmless error analysis, it is of no practical consequence, as North Carolina law independently permits the submission of aggravating factors to a jury using a special verdict." *Id.* Having concluded that there is no lack of procedural mechanism, the Court applied harmless error analysis according to *Neder v. United States*, 527 U.S. 1, 9, 119 S. Ct. 1827, 1834, 144 L. Ed. 2d 35, 47 (1999).

Applying the Court's reasoning in *Blackwell* to the facts in the present case, we conclude that despite the exclusion of a procedural mechanism in the North Carolina General Statutes for the submission of aggravating factors in a charge of driving while impaired, a common law procedural mechanism existed through the use of a special verdict. *See Blackwell*, 361 N.C. at 46-47, —— S.E.2d at —— (noting that the use of special verdicts in criminal trials "is well-settled under our common law"); *State v. Underwood*, 283 N.C. 154, 163, 195 S.E.2d 489, 494 (1973) ("[S]pecial verdicts are permissible in criminal cases."). Accordingly, we review the *Blakely* error in this case for harmless error according to *Neder*. *Neder* requires this Court to "determine from the record whether the evidence against the defendant was so 'overwhelming' and 'uncontroverted' that any rational fact-finder would have found the disputed aggravating factor beyond a reasonable doubt." *Blackwell*, 361 N.C. at 49, —— S.E.2d at —— (citing *Neder*, 527 U.S. at 9, 119 S. Ct. at 1834, 144 L. Ed. 2d at 47).

In the present case, the aggravating circumstances that the trial court found were: "The negligent driving of the defendant led to an accident causing property damage in excess of $500"; and "[t]he negligent driving of the defendant led to an accident causing personal injury." The overwhelming and uncontroverted testimony at trial was that defendant totaled the victim's Toyota Corolla and that one of the occupants of the car was bleeding from her face after the accident and was subsequently treated at the emergency room. Accordingly,

the error of not submitting the aggravating factors to the jury so that they could be found beyond a reasonable doubt was harmless error, and we uphold the sentence.

**[3]** Defendant's final argument on appeal is that it was error for the trial judge to give defendant a minimum and maximum sentence for driving while impaired because N.C.G.S. § 20-179 only allows a judge to give defendant an actual sentence, rather than a sentence range. Defendant cites *State v. Weaver*, 91 N.C. App. 413, 371 S.E.2d 759 (1988), in support of this argument. *Weaver*, however, addresses a judge's ability to weigh aggravating factors against mitigating factors and does not address whether a judge may impose a sentence range for convictions of driving while impaired. *Id.* at 417, 371 S.E.2d at 761.

Pursuant to the sentencing statute itself, each level of punishment sets out a sentencing range. For example, N.C.G.S. § 20-179(i) states: "A defendant subject to Level Three punishment . . . shall be sentenced to a term of imprisonment that includes a minimum term of not less than 72 hours and a maximum term of not more than six months." Thus, the face of the statute provides for a sentencing range. Therefore, the trial judge does not err when stating both a minimum and maximum sentence.

No error.

Judges TYSON and CALABRIA concur.